**Dated: July 19, 2012**
**The following is SO ORDERED:**

_____
Paulette J. Delk
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION
_____

In re

DAVID DOWLEN WILLIAMS                     Case No. 11-26453 PJD

Debtor.                                   Chapter 7

WILLIAM McSWAIN, JR. and
GEORGIA G. McSWAIN, as limited partners
in and on behalf of McSWAIN FAMILY
LIMITED PARTNERSHIP

Plaintiffs,

V.                                        Adv. Proc. No. 11-00536

DAVID DOWLEN WILLIAMS

Defendant.
_____

MEMORANDUM OPINION AND ORDER ON MOTION FOR RELIEF FROM
AUTOMATIC STAY FILED BY WILLIAM MCSWAIN, JR. AND GEORGIA G. MCSWAIN
AND DEBTOR'S OBJECTION
_____

The matter before the court arises out of the Motion for Relief from the Automatic Stay filed by William McSwain, Jr. and Georgia G. McSwain against David Dowlen Williams, the above-named chapter 7 Debtor. By virtue of 28 U.S.C. § 157(b)(2)(A) and (G) this is a core proceeding. The following shall constitute the court's findings of fact and conclusions of law in accordance with FED. R. BANKR. P. 7052.

The relevant background facts may be summarized as follows. William McSwain, Jr. and Georgia G. McSwain are limited partners in McSwain Family Limited Partnership ("Movants" or "McSwain, LP"). Each owns a 9.9% limited partnership interest in McSwain, LP. McSwain, LP is a registered Tennessee limited partnership whose general partner is Stage Road Corporation ("Stage Road"). David Dowlen Williams ("Debtor") is an owner and President of Stage Road and former brother-in-law of William McSwain, Jr. The Debtor was married to Michelle McSwain Williams, who died on March 7, 2006. McSwain, LP was formed in 1998 by William McSwain, Sr., the Debtor's former father-in-law, for the purpose of holding real estate in the Memphis area. Mr. McSwain, Sr. was the initial President of Stage Road, but in approximately 2001, the Debtor became its President. Mrs. Michelle McSwain Williams was the Secretary/Treasurer of Stage Road. Stage Road, as general partner of McSwain, LP was responsible for the day to day operations and management of McSwain, LP.

On October 30, 2008, Movants, as limited partners in and on behalf of McSwain, LP, filed a complaint against Stage Road and against the Debtor individually and as President of Stage Road in the Chancery Court of Shelby County, Tennessee. In the Complaint, Movants alleged that in operating and managing McSwain, LP, Debtor and Stage Road breached the McSwain, LP Agreement, breached the fiduciary duty and duty of loyalty owed to the limited partners, breached the duty of good faith, and willfully and intentionally converted property of

McSwain, LP. Injunctive relief, an accounting, removal of Stage Road as general partner and the appointment of a Receiver were sought through the Chancery Court Complaint.

Debtor and Stage Road filed answers to the Complaint on January 20, 2009, and asserted a counterclaim. On January 15, 2010, the Chancery Court granted a Default Judgment as to the liability of Debtor and Stage Road, following the Debtor's failure to appear at his previously scheduled adjourned deposition. The court struck the answers of Debtor and Stage Road, and dismissed the Counter-Complaint. Through the Default Judgment, the Debtor and Stage Road, *inter alia*, were enjoined from taking any action on or on behalf of McSwain, LP. On April 5, 2010, the Chancery Court entered a Consent Order in which a Special Master was appointed to perform an accounting of the financial affairs of McSwain, LP and Stage Road, and to determine damages. The Debtor was summoned to a May 18, 2010 hearing before the Special Master, but the Debtor failed to appear at the hearing, although his attorney did appear.[1] No proof was presented at the hearing on behalf of the Debtor or Stage Road. The Special Master filed his Report on April 26, 2011, finding that McSwain, LP was owed in excess of $7,000,000.00 by the Debtor and Stage Road. Objections to the Report were to be filed on or before May 13, 2011, but no objections were filed by that date.

On June 27, 2011, Debtor filed a Chapter 7 bankruptcy petition. On December 7, 2011, McSwain, LP filed a Complaint Objecting to Dischargability of Claims in which it primarily alleges that the Debtor obtained property from it through actual fraud, embezzled funds while acting in a fiduciary capacity, and willfully and maliciously caused injury to it and its property.

---

[1] The Debtor was represented by at least three lawyers during the course of the Chancery Court case. Two of the lawyers were allowed to withdraw, and one failed to file an appearance in the case.

McSwain, LP alleges that all of these are non-dischargeable acts under 11 U.S.C. § 523(a)(2)(A), (4), and (6).  The Debtor filed an Answer to the Complaint on January 18, 2012, in which he raised several defenses, including that Debtor is not a fiduciary within the meaning of 11 U.S.C. § 523(a)(4), that Mr. and Mrs. McSwain lack standing to bring a derivative action on behalf of McSwain, LP, and also accord and satisfaction and/or setoff.

Movants filed the instant Motion for Relief from the Automatic Stay pursuant to 11 U.S.C. § 362(d)(1) on February 10, 2012, in which Movants ask this court for relief from the automatic stay to allow the Chancery Court to consider McSwain, LP's application to confirm the Special Master's Report[2], and for entry of final judgment against the Debtor.  Movants do not seek to be allowed to issue execution against the Debtor.  Debtor filed an Objection to the Motion on February 22, 2012, and Movants filed a Reply to Debtor's Objection on April 9, 2012.  This court conducted a hearing on the Motion to Modify the Automatic Stay, and Debtor's Objection thereto on May 8, 2012.[3]

The court has reviewed the statements of counsel from the hearing and the record as a whole. Whether this court should modify the automatic stay to permit the Chancery Court to consider the Movants' application to confirm the Special Master's Report must be determined by 11 U.S.C. § 362(d)(1), which provides that "the court **shall** grant relief from the stay...for cause,

---

[2]Pursuant to Tennessee Rule of Civil Procedure 53.04(2), the Chancery Court, after conducting a hearing on the application for action on the Report, may adopt the Special Master's Report, may modify it, may reject it in whole or in part, may receive further evidence or may recommit the Report to the Special Master with instructions.

[3] The Debtor has not removed the Chancery Court lawsuit to this court pursuant to 28 U.S.C. § 1441, and neither party has asked this court to exercise discretionary abstention pursuant to 28 U.S.C. §1334(c)(1). If the Chancery Court lawsuit had been removed, and the Movants had sought to remand the case to the Chancery Court, this court would have remanded it.

including the lack of adequate protection of an interest in property[.]" 11 U.S.C. § 362(d)(1) (emphasis added). What constitutes "cause" is not defined in 11 U.S.C. § 362 or any other section of the Bankruptcy Code. As a result, what constitutes cause is determined on a case-by-case basis within the sound discretion of the court. *See In re Trident Assocs. Ltd. P'ship*, 52 F.3d 127, 131 (6th Cir. 1995); *Laguna Assocs. Ltd. P'ship v. Aetna Casualty & Surety Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d 734, 737 (6th Cir. 1994).

The Sixth Circuit has not adopted a single, clear test to determine whether "cause" exists under 11 U.S.C. § 362(d)(1) in the context of a motion to modify the automatic stay to allow pending litigation in a nonbankruptcy forum to proceed to finality. It has, however, indicated that courts should consider a variety of factors, including judicial economy, trial readiness, the resolution of preliminary bankruptcy issues, the creditor's chance of success on the merits, the cost of defense or other potential burden to the bankruptcy estate, and the impact of the litigation on other creditors. *Garzoni v. K-Mart Corp. (In re Garzoni)*, 35 Fed. Appx. 179, 181 (6th Cir. 2002). Courts of appeal in other circuits have listed factors to be considered as well, and nearly all courts include a general balancing of the hardships test. Additional factors include whether relief would result in a partial or complete resolution of the issues, whether litigation in another forum would prejudice the interests of other creditors, whether the expertise of a state court is needed in resolving a question of state law, whether the estate can be protected by a requirement that creditors seek enforcement through the bankruptcy court, and whether the other proceeding involves the debtor as a fiduciary. *See Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992); *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2nd Cir. 1990). Courts are not required to give equal weight to each of the possible relevant factors. *In re Laventhol & Horwath*, 139 B.R. 109, 117 (S.D.N.Y. 1992); *In re*

*Project Orange Assocs*., LLC, 432 B.R. 89, 104 (Bankr. S.D.N.Y. 2010).

In this case, judicial economy is an extremely important factor, and weighs in favor of modifying the automatic stay, because the Chancery Court lawsuit has been pending for more than three years before the Debtor's bankruptcy case was filed, the Chancery Court and its appointed Special Master are familiar with the state law claims, the Special Master has filed a report, and the Chancery Court has entered an interlocutory default judgment against the Debtor. Allowing the Chancery Court to hear this case to finality may significantly reduce the duplication of evidence. In addition, the doctrine of comity and respect for state law in matters involving both the bankruptcy and state courts also dictate that the automatic stay be modified to permit the state court to proceed with the case to finality. The hardship to the Debtor if the automatic stay is modified to permit the pending lawsuit to go forward and the hardship to the Movants if the automatic stay is not modified are equally burdensome, thus the balance of the hardships does not weigh for or against granting relief. In modifying the automatic stay to permit the Chancery Court litigation to proceed, risks exist for the Debtor in that he may be unsuccessful in any effort to vacate the default judgment or in making any changes to the special Master's Report, and thus a chance exists that the collateral estoppel effect will adversely affect the Debtor's interests in the adversary proceeding which is pending in the bankruptcy court. Likewise, if the automatic stay is not modified, Movants may have to present evidence and make arguments in the adversary proceeding that have already been made in the Chancery Court case.

The impact of the litigation on other creditors may be lessened by requiring that the enforcement and satisfaction of any judgment be through the bankruptcy court to be dealt with along with the claims of other creditors. The Chancery Court lawsuit involves state law issues and involves the Debtor as a fiduciary. Modifying the automatic stay preserves the interest of

comity and respect for state law and also is the most efficient way to provide a resolution of the issue of the Debtor's asserted liability to McSwain, LP.

Debtor argues that the Movants will seek to turn the interlocutory order into a final one, and then will assert the collateral estoppel effect of the order. But the same argument that Debtor makes to this court regarding his long history of chronic major depression and anxiety disorders may be made to the Chancery Court in either seeking to set aside or obtain relief from the default judgment on the basis of good cause or in seeking to have the Special Master's Report modified, rejected, have the Special Master receive further evidence or have the Report recommitted to the Master with instructions.

State trial judges in Tennessee are given broad discretion to set aside default judgments for good cause. *Holiday v. Shoney's South, Inc.*, 42 S.W.3d 90, 92 (Tenn. Ct. App. 2000); *Akers v. Bonifasi*, 629 F.Supp. 1212, 1214 (M.D. Tenn. 1984); *Orten v. Orten*, 185 S.W.3d 825, 831 (Tenn. Ct. App. 2005). Debtor has been represented for over a year in this bankruptcy case by able counsel who will certainly be able to find a way to be heard before the Chancery Court through pleadings or through oral argument in order to make the court aware of asserted good cause to set aside the default judgment (Debtor's Objection cites cases in which the mental condition of the Debtor was sufficient cause for vacating default judgments), to assert defenses to the Movants' claims, and to note the numerous errors that Debtor argues exist within the Special Master's Report. Discussion of the collateral estoppel effect of the default judgment is premature in that no final order exists at this point, and reasonable opportunities exist to alter that result.

After considering a totality of the relevant factors, the court finds that the automatic stay should be modified to permit the Chancery Court lawsuit to proceed.

Movants' Motion for Relief from Automatic Stay is granted to permit them to proceed against Debtor, David Dowlen Williams, in the pending Chancery Court lawsuit; however, enforcement or satisfaction of any judgment against the Debtor will be stayed until further order of this court. This court will hold the Movants' adversary proceeding under 11 U.S.C. § 523(a)(2), (4), and (6) in abeyance until after the Chancery Court lawsuit reaches finality. This court will determine whether the debt, if at all, is dischargeable after the Chancery Court's judgment has become final. A status conference in the adversary complaint will be set by this court upon the parties written notice that the state court litigation is final; a copy of the state court order should accompany that notice.

IT IS SO ORDERED.


Cc:     Debtor
        Attorney for Debtor
        Movants
        Attorney for Movants
        Case Trustee
        U.S. Trustee